**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|                                    |   |                         |
|------------------------------------|---|-------------------------|
|                                    | : |                         |
| CAITRIONA BRADY                    | : | CIVIL ACTION            |
|     Plaintiff, | : | NO.   21-1934           |
| -vs-                               | : |                         |
|                                    | : |                         |
| THE MIDDLE EAST FORUM,             | : | PLAINTIFF REQUESTS      |
| GREG ROMAN, and DANIEL PIPES       | : | TRIAL BY JURY           |
|                                    | : |                         |
|     Defendants. | : |                        |
|                                    | : |                         |

Plaintiff, Caitriona Brady, by and through undersigned counsel hereby files this Civil Action Complaint against Defendant The Middle East Forum, Greg Roman, and Daniel Pipes (collectively "Defendants") and avers the following:

## I.   PARTIES

1.      Plaintiff, Caitriona Brady ("Plaintiff" or "Ms. Brady") is an adult individual who resides in the Commonwealth of Pennsylvania.

2.      Defendant, Middle East Forum ("MEF") is a business organization existing under the laws of the Commonwealth of Pennsylvania with an address for the purposes of service 1650 Market Street, Suite 3600, Philadelphia, PA 19103.

3.      At all times relevant to this Civil Action, Daniel Pipes, and Greg Roman were employees of Defendant, The Middle East Forum, and held supervisory authority over Plaintiff, Caitriona Brady during Plaintiff's employment for Defendant.

4.      Defendant, Daniel Pipes is the President of The Middle East Forum and held supervisor authority over Plaintiff, Caitriona Brady.

5.      Defendant, Greg Roman is the Director of The Middle East Forum and held supervisor authority over Plaintiff, Caitriona Brady.

1

## II.   NATURE OF THE CASE

6.      Plaintiff complains pursuant to the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRC"), under the laws of the Commonwealth of Pennsylvania; and under the Philadelphia Fair Practices Ordinance, § 9-1100 *et. seq.* ("PFPO") and seeks damages to redress injuries Plaintiff suffered as a result of Defendants' discrimination, harassment, retaliation and the hostile work environment which ultimately led to Plaintiff's unlawful termination from her employment for Defendants.   Accordingly, Plaintiff brings this Civil Action to redress injuries Plaintiff suffered as a direct result of violations of federal laws, the laws of the Commonwealth of Pennsylvania and the laws of the City of Philadelphia and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of her sex and gender, and forced to endure a hostile work environment, and retaliated against by her employer for reporting such discrimination and harassment.

## III.   JURISDICTION AND VENUE

7.      This action involves a diversity of jurisdiction.   Plaintiff, Caitriona Brady is a resident of the State of New Jersey.   Plaintiff, Caitriona Brady is a permanent resident of the State of New Jersey.

8.      Defendants, Greg Roman, Daniel Pipes, and The Middle East Forum are all residents of the Commonwealth of Pennsylvania.

9.      Accordingly there is complete diversity of jurisdiction.

10.      Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in the City of Philadelphia in the Commonwealth of Pennsylvania where the discrimination, harassment and hostile work environment complained of occurred.

2

11.     On or around June 20, 2019, Plaintiff, Caitriona Brady filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein.   Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission and the Philadelphia Commission on Human Relations.

12.     Plaintiff, Caitriona Brady's claims under the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance are ripe for suit as it has been more than one year since Plaintiff's Charge of Discrimination was dual filed.

## IV.   MATERIAL FACTS

13.     Plaintiff, Caitriona Brady began her employment for Defendant, The Middle East Forum ("MEF") sometime around May 2017.

14.     Plaintiff was hired and began her employment at MEF as an intern.

15.     After her internship, Plaintiff, Caitriona Brady was offered full time employment and earned the position of Development Associate.

16.     She reported to supervisors, Daniel Pipes and Defendant, Greg Roman.

17.     All of the conduct and comments to which Plaintiff Caitriona Brady was subjected occurred during a period of time that extended until November 2018.

18.     In 2019, Plaintiff, Caitriona Brady was subjected to further discrimination and harassment in the workplace due to her sex and gender.

19.     Plaintiff filed her Charge of Discrimination June 20, 2019.

20.     Accordingly, all acts of discrimination and harassment in the workplace that occurred within 300 days of June 20, 2019 are timely pled.

21.     Moreover, Defendants' conduct subjected Plaintiff to a hostile work environment which occurred over time and was one continuous, nonstop act of discrimination and harassment in the workplace based upon Plaintiff's sex and gender.

22.     Plaintiff claims violations of the continuous violations doctrine as Plaintiff was subjected to severe and pervasive discrimination and harassment in the workplace beginning sometime around January 2018 and continuing until November 2018, and ongoing past November 2018 until Plaintiff's termination from employment.

23.     Greg Roman began a campaign of sex and gender discrimination to which Plaintiff, Caitriona Brady was subjected.

24.     This campaign of sex and gender discrimination was severe and pervasive and occurred on a continuous basis from January 2018 until at least November 2018.

25.     Greg Roman continued his campaign of sex and gender discrimination from sometime around January 2018 until November 2018 when Greg Roman was forced to discontinue visiting the MEF headquarters.

26.     Greg Roman was forced to discontinue working at the MEF headquarters in Philadelphia because of the severe and pervasive discrimination and harassment to which he subjected Plaintiff, Caitriona Brady.

27.     Defendant, Caitriona Brady was part of a group of female employees whose reports of discrimination and harassment led to a meeting in November 2018.

28.     Pursuant to the information reported by female staff including Plaintiff, Caitriona Brady, Greg Roman was no longer permitted to work at or visit the MEF headquarters in Philadelphia.

29.     Greg Roman's campaign of sex and gender discrimination to which Plaintiff was subjected started sometime around January 2018 and continued until at least November 2018.

30.     This period is the continuous period during which Plaintiff, Caitriona Brady was subjected to a hostile work environment.

31.     From January 2018 until at least November 2018 Greg Roman initiated a campaign of continuous sex and gender discrimination to which Plaintiff, Caitriona Brady was subjected during her employment for Defendants.

32.     Plaintiff filed her Charge of Discrimination June 20, 2019.   A theory predicated upon the continuous violations doctrine will include all acts that contributed to the hostile work environment as long as the last act occurred within the statutory period.

33.     Plaintiff's statute of limitations for filing her Charge of Discrimination under federal protections is three hundred (300) days.

34.     Three hundred (300) days prior to June 20, 2019 is August 25, 2018.

35.     Greg Roman's continuous campaign of sex and gender discrimination and abuse reached far beyond the August 25, 2018 statute of limitations and did not end until at least November 2018.

36.     Then in March 2019, Defendant, Greg Roman subjected Caitriona Brady to further discrimination and harassment in the workplace due to her sex and gender and began informing Caitriona's coworkers that Caitriona Brady's father was engaged in an adulterous affair with Plaintiff's father.

37.     Plaintiff, Caitriona Brady claims violations of the continuing violations doctrine and includes all acts of sexual harassment and abuse that occurred beginning January 2018 and continuing until November 2018.

38.     Greg Roman's comments and conduct started before the August 25, 2018 statutory period and continued without pause until at least November 2018 when Greg Roman was forced to stop visiting Middle East Forum headquarters.

39.     Greg Roman could no longer visit MEF headquarters because of the severe and pervasive sex and gender discrimination to which Plaintiff, Caitriona Brady was subjected on a continuous basis without pause from January 2018 until November 2018.

40.     Importantly, the only reason that Greg Roman stopped the unwelcome sex and gender discrimination in November 2018 was because Greg Roman was no longer allowed to visit or work at the MEF Philadelphia headquarters.

41.     This was directly because of the risk of harm that Greg Roman's presence had related to the female staff.

42.     Greg Roman was ordered to discontinue all visits to the MEF Philadelphia headquarters immediately in November 2018.

43.     Greg Roman's campaign sex and gender discrimination only stopped when Plaintiff, Caitriona Brady and several coworkers reported Greg Roman's severe and pervasive sex and gender discrimination.

44.     Greg Roman was forced to discontinue all visits to MEF headquarters as a direct result of his continuous and nonstop campaign of sexual harassment, abuse, and sex and gender discrimination to which Plaintiff, Caitriona Brady was subjected by Defendant, Greg Roman.

45.     Greg Roman is so high up in the organization of the Middle East Forum and holds the position of Director of the Middle East Forum.

46.     At all times relevant to this civil action Greg Roman held the position of Director of the Middle East Forum.

47.     As the Director of the Middle East Form, Greg Roman was the penultimate person in charge of the Middle East Forum.

48.     Accordingly, Greg Roman along with Defendant, Daniel Pipes, ran and managed the Middle East Forum.

49.     Greg Roman was and continues to be so high up in the organization that the only person to whom Defendant, Greg Roman reports is Defendant, Daniel Pipes.

50.     Greg Roman is considered by Daniel Pipes to be crucial to the operations and success of the Middle East Forum.

51.     Daniel Pipes has stated that The Middle East Forum needs Defendant, Greg Roman to operate.

52.     Greg Roman has the ability to create policy for the Middle East Forum.

53.     Greg Roman must be considered a proxy for MEF and all discrimination and harassment to which Plaintiff, Caitriona Brady was subjected including the discrimination and harassment based upon her sex and gender, and retaliation by Greg Roman should be held to a proxy-liability standard.

54.     Daniel Pipes is currently the President of the Middle East Forum.   There are no individuals employed by the Middle East Forum who hold positions above Defendant, Daniel Pipes.

55.     Defendant, Greg Roman, and Daniel Pipes are responsible for developing, enacting, and enforcing all policies, procedures, protocols employed to operate the Middle East Forum.

56.     At all times relevant to this Civil Action Daniel Pipes was the President of MEF.

57.     Greg Roman is a large man and uses his size and height in his violent and aggressive interactions with female employees who Greg Roman supervised.

58.     Greg Roman has subjected female employees including Caitriona Brady to discrimination and harassment based upon their sex and gender which includes singling out the female staff and treating female employees differently than their male counterparts.

59.     Greg Roman used his size to intimidate and sometimes overpower female employees who Greg Roman supervised with proxy-authority as Director of the MEF.

60.     Greg Roman sexually assaulted Plaintiff, Caitriona Brady's coworker, Patricia McNulty at the AIPAC conference which occurred in Washington D.C., when Greg Roman violently yanked Patricia McNulty across the couch, onto his lap, and whispered inappropriate, unwelcome sexual advances in Ms. McNulty's ear.

61.     Plaintiff, Caitriona Brady was subjected to discrimination and harassment based upon her sex and gender by Greg Roman when Defendants brought Greg Roman back to the Middle East Forum and allowed Greg Roman to continue his position as Director of the Middle East Forum sometime around March 2019 until the present.

62.     Plaintiff, Caitriona Brady was forced to work in a hostile work environment due to Greg Roman's severe and pervasive discrimination and harassment based upon Plaintiff, Caitriona Brady's sex and gender while Plaintiff, Caitriona Brady worked in the Philadelphia MEF office.

63.     Greg Roman counted the number of times Plaintiff, Caitriona Brady used the rest room.

64.     Working with Greg Roman meant that Plaintiff, Caitriona Brady would have to contend with Greg Roman's inappropriate conduct and comments aimed toward the MEF female staff based upon their sex and gender.

65.     Greg Roman has subjected the following female employees and/or females to discrimination and harassment based upon their sex and gender: (1) Lisa Barbounis, (2) Patricia McNulty, (3) Marnie Meyer, (4) Tiffany Lee, (5) Caitriona Brady, (6) Delaney Yonchek, (7) Leah Merville, (8) Alana Goodman, (9) Eman Patel, (10) Samantha Mandalas, (11) Laura Frank, (12) Lara Szott, (13) Rosie (last name unknown), and (14) Gabrielle Bloom.

66.     At all times relevant to this civil action, Greg Roman was Plaintiff, Caitriona Brady's direct supervisor and used his supervisory and proxy authority to subject Plaintiff to unwelcome sex and gender discrimination.

67.     Greg Roman used his position of Director of the MEF to make Plaintiff's work more difficult and forced Plaintiff to work longer hours by yelling at Plaintiff, Caitriona Brady in a violent and aggressive manner.

68.     The sex and gender discrimination to which Plaintiff, Caitriona Brady was subjected during her employment at MEF by Greg Roman created a hostile work environment for Plaintiff, Caitriona Brady.

69.     Greg Roman subjected almost every female employee who he supervised at MEF to unwelcome sex and gender discrimination.

70.     Before Plaintiff, Caitriona Brady began her employment at MEF, there were two female employees of MEF named Laura Frank ("Laura") and Lara Szott ("Lara").

71.     Laura and Lara were employees of MEF.   Their supervisors included Daniel Pipes and Defendant, Greg Roman.

9

72.     Greg Roman was the direct supervisor of Laura Frank and Lara Szott.

73.     Laura and Lara were subjected to severe and pervasive discrimination and harassment due to their sex and gender.

74.     Laura and Lara engaged in protected activity when they held discussions and considered their options for legal recourse due to Greg Roman's discrimination and harassment in the workplace.

75.     Daniel Pipes was on notice of Laura and Lara's allegations involving Defendant, Greg Roman and took no ameliorative or corrective action.

76.     Defendant, Greg Roman was permitted to continue his employment for The Middle East Forum notwithstanding the allegations of sex and gender discrimination presented by Laura and Lara.

77.     During Plaintiff's employment for Defendants, the Director of Human Resources was Marnie Meyer.

78.     Throughout the course of Marnie Meyer's employment with Middle East Forum she was subjected to sexual harassment by Greg Roman, as well as the subject of accusations involving sex.

79.     Greg Roman's sexual harassment of Marnie Meyer was ongoing.

80.     Greg Roman leered at almost all of the women who worked for the Forum.

81.     Greg Roman stared at their legs, our breasts and buttocks.

82.     Greg Roman fostered an environment of mistrust and insisted all communications from female staff members be filtered through him.

83.     This included communications with Dr. Pipes as Greg Roman became angry if he heard that a female staff member communicated with Daniel Pipes without his knowledge or approval.

84.     Greg Roman told the female staff he could hack electronic devices including laptops and smartphones.

85.     Greg Roman also told the female staff he had access to all of our communications.

86.     Greg Roman had surveillance cameras set up in the office which he used to threaten and intimidate the female staff.

87.     Greg Roman made reference to additional cameras to threaten that he was always watching the female employees.

88.     At least four female employees presented Daniel Pipes with allegations of sex and gender discrimination involving Greg Roman and were terminated from their employment.

89.     Daniel Pipes has stated his objectives to terminate female employees who voices their concern about Greg Roman.

90.     To the contrary, Daniel Pipes and Greg Roman have initiated, implemented and enforced policies designed to frustrate the congressional intent of state and city anti-discrimination laws enacted to protect female employees from discrimination and harassment in the workplace.

91.     Defendant, Daniel Pipes' objectives, policies and procedures have worked to protect Defendant, Greg Roman, despite the ongoing and increasing number of allegations of sex and gender discrimination and harassment aimed at female staff in which Greg Roman was implicated.

11

92.     Daniel Pipes has ignored and disregarded ongoing reports of discrimination and harassment involving Greg Roman along with his duty to protect the female employees who work at the MEF.

93.     Accordingly Defendant, Daniel Pipes' policies and actions have expressly communicated that Greg Roman's discrimination and harassment of the female staff of MEF is allowed, sanctioned, permitted and condoned.

94.     Greg Roman's discriminatory conduct and comments as Director of the MEF has occurred with express authorization of Defendant, Daniel Pipes.

95.     This authorization has resulted in MEF's female staff subjected to severe and pervasive sexual harassment discrimination and harassment based on sex and gender.

96.     Plaintiff, Caitriona Brady began her employment soon after Laura and Lara were unlawfully terminated from their employment by Greg Roman and Defendant, Daniel Pipes.

97.     Daniel Pipes has a history of discrimination of women based upon their sex and gender.

98.     Daniel Pipes responded to reports of discrimination and harassment by female staff by saying in words or substance, "Those are not reports.   That is women moaning."

99.     When asked why he did not investigate reports of sexual harassment or sex and gender discrimination, Daniel Pipes said, "I am not a den mother."

100.     Daniel Pipes also made comments in words or substance that priests who sexual molest boys have been accused of worse and still get to keep their jobs.

101.     Greg Roman also has a history of discrimination and harassment of women based on their sex and gender.

102.    Female employees who worked with Daniel Pipes have been subjected to ridicule, abuse, discrimination, and harassment due to their sex and gender.

103.    Female employees were scared to work with or close to Greg Roman and left The Middle East Forum to avoid being subjected to discrimination and harassment in the workplace by Greg Roman.

104.    Prior to leaving her employment for MEF, Rosie (last name unknown) said, "I will be dead before working for Greg Roman."

105.    Plaintiff, Caitriona Brady is not the only female employee who Greg Roman supervised who has alleged that Greg Roman subjected her to sex and gender discrimination and harassment.

106.    Greg Roman has subjected multiple female employees to severe and pervasive sex and gender discrimination and harassment.

107.    The Middle East Forum and Daniel Pipes has received Charges of Discrimination from at least six female employees who alleged that Greg Roman subjected them to discrimination and harassment in the workplace based upon their sex and gender.

108.    Daniel Pipes did nothing in response to any of these Charges of Discrimination. He refused to investigate.   He refused to initiate prompt remedial measures.

109.    Female employees who have reported Greg Roman's sex and gender discrimination, and/or sexual harassment, sexual misconduct, sexually inappropriate behavior including quid pro quo sexual harassment, stalking like behavior, or in some cases sexual assaults, include (1) Lisa Barbounis, (2) Caitriona Brady (3) Delaney Yonchek, (4) Patricia McNulty, and (5) Marnie Meyer.

110.    Daniel Pipes refused to investigate.

13

111.     Daniel Pipes refused to initiate prompt remedial measures.

112.     Greg Roman subjected several of Plaintiff's coworkers including Marnie Meyer, Patricia McNulty, and Lisa Barbounis to sexual harassment.

113.     Greg Roman uses his size, height, authority, and power to make female employees who work at the MEF feel intimidated, threatened and uncomfortable.

114.     Greg Roman has also subjected Plaintiff, Caitriona Brady's coworker, Marnie Meyer to severe and pervasive discrimination and harassment in the workplace based upon her sex and gender.

115.     Greg Roman put his hands on Lisa Barbounis and Patricia McNulty in a sexual manner that was not welcome.   This is the definition of sexual assault.

116.     Greg Roman leveraged Lisa Barbounis's desire to see Israel to lure her across national borders with the intent of using fraud, coercion and/or force to engage Lisa Barbounis in sexual acts.

117.     During the trip, Greg Roman yelled at Lisa Barbounis ordering her to engage in fellatio.

118.     In or around April 2018, Greg Roman and Lisa Barbounis traveled to Israel.

119.     Greg Roman targeted and propositioned a young MEF intern for sex.

120.     Greg Roman confirmed to Lisa Barbounis that he engaged in a sexual relationship with the young intern.

121.     Greg Roman also subjected Plaintiff, Caitriona Brady to discrimination based on sex and gender and was violently aggressive toward female staff members including Plaintiff, Caitriona Brady.

122.     Greg Roman screamed at Plaintiff, Caitriona Brady.

14

123.    Greg Roman yelled at Plaintiff, Caitriona Brady in a violent and aggressive manner.

124.    Greg Roman did not treat Plaintiff's similarly situated male coworkers in this discriminatory, abusive, hostile and intolerable manner.

125.    Greg Roman also subjected Plaintiff's female coworkers to discrimination and harassment due to their sex and gender.

126.    Greg Roman also subjected coworker, Lisa Barbounis to severe and pervasive discrimination and harassment based upon her sex and gender.

127.    Greg Roman also subjected Plaintiff's coworker, Patricia McNulty to severe and pervasive discrimination and harassment based upon her sex and gender.

128.    Greg Roman also subjected Plaintiff's coworker, Marnie Meyer to severe and pervasive discrimination and harassment based upon her sex and gender.

129.    At all times, Greg Roman was Plaintiff Caitriona Brady's direct supervisor and held proxy authority as the number two executive of the MEF.

130.    Greg Roman has subjected several other female employees who worked at the MEF to discrimination and harassment based upon their sex and gender.

131.    Greg Roman developed, implemented and enforced policies, procedures and protocols designed to limit employees' access to President Daniel Pipes.

132.    These policies which were strictly enforced which eliminated employees' ability to talk directly to Daniel Pipes and to set up Greg Roman as the top MEF employee who employees could go to for assistance.

133.    Greg Roman developed and enforced these policies with the intention of limiting

Plaintiff, Caitriona Brady's ability to report Greg Roman's discrimination and harassment of the

female staff based upon their sex and gender.

134.    Greg Roman developed, implemented and enforced policies which were approved

by Daniel Pipes whereby employees including Plaintiff, Caitriona Brady were not allowed to go

directly to Daniel Pipes to express concerns or obtain assistance.

135.    Greg Roman made inappropriate comments in the presence of Plaintiff, Caitriona

Brady.

136.    Greg Roman made comments about women's' looks, saying, look how hot this

one it, look how hot that one is.

137.    Greg Roman subjected Plaintiff Caitriona Brady to discrimination and harassment

in the office based upon Plaintiff's sex and gender.

138.    Greg Roman was highly insulting to Plaintiff, Caitriona Brady in the manner in

which he spoke to Plaintiff about work and assignments.

139.    Plaintiff, Caitriona Brady reported Greg Roman's demeaning, insulting,

condescending to her direct supervisor, Lisa Barbounis, however, no investigation or remedial

measures took place.

140.    Greg Roman used his size and height to intimidate Plaintiff, Caitriona Brady.

141.    Greg Roman entered Plaintiff Caitriona Brady's office when she was not present

and explored her computer including personal emails, chat history, and internet browser history.

142.    Greg Roman undertook to discriminate and harass female staff, including

subjecting the female staff to sex and gender discrimination, sexual harassment and/or sexual

misconduct with the express understanding that Daniel Pipes would protect Defendant, Greg Roman.

143.    Greg Roman subjected Plaintiff to severe and pervasive discrimination and harassment based upon her sex and gender.

144.    This discrimination and harassment was evident in the way that Greg Roman spoke to Plaintiff, the assignments he required Plaintiff to complete, the tone of voice he used, body language, expressions, use of language and cursing, and other threatening conduct.

145.    Greg Roman created a hostile work environment for Plaintiff, Caitriona Brady.

146.    The work environment was severe and pervasive as Plaintiff was subjected to nonstop, continuous, discrimination and harassment in the workplace on a daily basis.

147.    Plaintiff reported the discrimination and harassment to which she was subjected by Defendant, Greg Roman.

148.    Plaintiff, Caitriona Brady notified Marnie Meyer who was the Director of Human Resources.

149.    Marnie Meyer prepared a five-page handwritten letter addressed to Daniel Pipes and provided the letter on November 1, 2018.

150.    Marnie Meyer notified Daniel Pipes that Greg Roman was using his supervisory authority as Director of the MEF to "railroad" other female employees including Plaintiff's coworker, Lisa Barbounis and "set her up for failure."

151.    Marnie Meyer also reported a hostile work environment which was created by Defendant, Greg Roman.

152.    Marnie Meyer also reported to Daniel Pipes that Greg Roman had sex with an MEF intern named Leah Merville.

17

153.    Marnie Meyer reported that Leah Merville was eighteen (18) years old at the time, that Greg Roman had sex with Leah Merville in a hotel room in Israel, and at a time when Leah Merville needed Greg Roman to sign paperwork for her.

154.    After reporting this to Defendant, Daniel Pipes, Marnie Meyer reported that this was just "the tip of the iceberg."

155.    Marnie Meyer also explained that she reported Greg Roman's unlawful discrimination and harassment with handwritten letters out of fear because Greg Roman used the knowledge he gained as Director of the MEF, including secure passwords, to spy on employees emails and files.

156.    Accordingly, Marnie Meyer handwrote her reports of discrimination to Daniel Pipes because she was scared to create an electronic record that could be accessed by Defendant, Greg Roman.

157.    Marnie Meyer's fear of creating an electronic record was directly due to Greg Roman's conduct including stalking and spying.

158.    Several female employees of the Middle East Forum spoke to Daniel Pipes on November 1, 2018.

159.    Marnie Meyer made a report to notify Daniel Pipes about Greg Roman's sexual harassment, sexual misconduct, and/or gender and sex discrimination.

160.    Marnie Meyer turned in a five-page, detailed, handwritten report of Greg Roman's unlawful conduct and comments.

161.    Lisa Barbounis made a report to notify Daniel Pipes about Greg Roman's sexual harassment, sexual misconduct, and/or gender and sex discrimination and specifically reported what occurred during the Israel trip.

162.    Plaintiff, Caitriona Brady made a report to notify Daniel Pipes about Greg Roman's sexual harassment, sexual misconduct, and/or gender and sex discrimination.

163.    Prior to November 1, 2018, Daniel Pipes had actual notice regarding Greg Roman's sexual harassment, sexual misconduct and sex and gender discrimination.

164.    Prior to November 1, 2018, and by at least December 2016, Daniel Pipes was notified about a Charge of Discrimination filed with the Equal Employment Opportunity Commission alleging that Greg Roman subjected female employees to sexual harassment and sexual misconduct.

165.    The Charge of Discrimination was filed by a former MEF employee.

166.    Greg Roman's position was that any sexual harassment or sex and gender discrimination experienced by female staff was their fault because they invited it by the way they dressed.

167.    Greg Roman's position that the female staff and the way they dressed invited sex and gender discrimination was echoed by Greg Roman's sister in front of Daniel Pipes.

168.    Daniel Pipes also had actual notice about Laura Frank and Lara Szott and their conversations around Greg Roman's unlawful conduct and comments.

169.    Despite the reports concerning the following female staff of MEF (1) Tiffany Lee, (2) Gabrielle Bloom, (3) Leah Merville, (4) Laura Frank, (5) Lara Szott, (6) Patricia McNulty, (7) Lisa Barbounis, (8) Marnie Meyer, (9) Plaintiff, Caitriona Brady, (10) Delaney Yonchek, (11) Samantha Mandalas, (12) Eman Patel, and (13) Rosie (last name unknown), Daniel Pipes made comments such as, "I am just going to have to go with Greg Roman's word."

170.     Daniel Pipes was in possession of and had express and actual knowledge about numerous reports of Greg Roman's sexual harassment and sexual misconduct to which Greg Roman subjected female employees who worked at The Middle East Forum.

171.     Daniel Pipes remained loyal to Defendant, Greg Roman, who has been accused of preying on female employees of The Middle East Forum for at least the past five (5) years.

172.     Daniel Pipes confirmed to Matthew Bennett the reason that Daniel Pipes refused to take corrective action with regard to Greg Roman.   Daniel Pipes sent an electronic message to Matthew Bennett stating that he would not take action against Greg Roman due to (1) money and (2) optics.

173.     Had Daniel Pipes considered protecting his female staff by acting in accordance with federal, state and local anti-discrimination laws, Plaintiff, Caitriona Brady would never have been subjected to severe and pervasive discrimination and harassment in the workplace by Defendant, Greg Roman.

174.     Due to Daniel Pipes refusal to investigate and remediate earlier reports of discrimination and harassment in the workplace, Plaintiff, Caitriona Brady and many other of Plaintiff's female coworkers were subjected to a campaign of discrimination and harassment due to their sex and gender.

175.     Had Daniel Pipes acted in accordance with laws aimed at protecting women from sexual harassment in the workplace, he would have investigated Greg Roman as early as 2016 and prompt remedial measures would have been implemented to ameliorate and/or eliminate the future sex and gender discrimination which the female staff of the MEF were subjected to thereafter.

176.    Daniel Pipes   held a group meeting on November 1, 2018, during which, Plaintiff, Caitriona Brady, Lisa Barbounis, Marnie Meyer, and Patricia McNulty expressed grave concerns regarding Greg Roman's discrimination and harassment of the female staff.

177.    During the November 1, 2018 meeting, Daniel Pipes was notified about the sexual assault in Washington D.C., during the AIPAC Conference concerning Plaintiff, Caitriona Brady's coworkers, Patricia McNulty and Lisa Barbounis.

178.    Daniel Pipes learned that Greg Roman forcefully, violently, and aggressively picked Patricia McNulty up by her upper thigh and back-side, dropped her on his lap, and suggested that Ms. McNulty engage in sexual acts with Defendant, Greg Roman.

179.    Daniel Pipes also learned that Greg Roman had put his hands on Lisa Barbounis in an unwelcome manner.

180.    During the November 1, 2018 meeting, Lisa Barbounis reported the sexual harassment and sexual misconduct and sexual assault that occurred across national borders in Israel when Greg Roman subjected Lisa Barbounis to unwelcome lewd sexual advances including unwelcome sexual touching.

181.    On November 1, 2018, The Middle East Forum's female staff informed Daniel Pipes about Greg Roman's ongoing severe and pervasive discrimination and harassment in the workplace including Greg Roman's decision to proposition an eighteen (18) year old intern for sex in a hotel room in Israel while holding paperwork the intern required over her head.

182.    Daniel Pipes responded to the reports of sexual harassment, sexual misconduct, and sexual assaults by telling Plaintiff, Caitriona Brady, Lisa Barbounis, Marnie Meyer, Patricia McNulty, and other female staff that Greg Roman's conduct was not that big a deal.

183.    Daniel Pipes suggested that because priests who molest children were permitted by the Catholic Church to remain priests, Greg Roman should be permitted to continue his employment at the MEF.

184.    Daniel Pipes did not apologize to any of his female staff; for the years of abuse described and reported by his female staff on November 1, 2018.

185.    In fact, Daniel Pipes admonished the female staff for "surprising" him with their reports of sex and gender discrimination.

186.    Defendant, Daniel Pipes' conclusion that Greg Roman's conduct and comments had not risen to the level where discipline was warranted was based upon MEF policies which Daniel Pipes claimed supported his conclusions.

187.    Accordingly Daniel Pipes initiated no discipline and Greg Roman was permitted to continue his employment with MEF with no change in pay or benefits.

188.    Greg Roman's sister attended the meeting in Greg Roman's place and spent the meeting arguing in support of her brother and against the victims of Greg Roman's sex and gender discrimination.

189.    Greg Roman's sister said that the woman who Greg Roman sexually harassed were at fault for wearing provocative attire and specifically "short skirts."

190.    After the November 2018 meeting, Defendant, Daniel Pipes' claimed that Plaintiff, Caitriona Brady would no longer be forced to work with Defendant, Greg Roman.

191.    Daniel Pipes did not enforce his self-prescribed remedial measures and Plaintiff, Caitriona Brady was forced to continue working with Defendant, Greg Roman.

192.    For the next few months, Plaintiff, Caitriona Brady was forced to continue working with Defendant, Greg Roman.

193.    The only change was that Greg Roman did not visit the office.

194.    Greg Roman's work duties, responsibilities, and authority remained unchanged.

195.    Plaintiff, Caitriona Brady continued to be subjected to discrimination and harassment due to her sex and gender.

196.    The big difference was that Greg Roman set out on a mission of retaliation aimed at the female employees who reported his unlawful conduct.

197.    Plaintiff was still subjected to the same discrimination and harassment in the workplace.

198.    In fact, the discrimination and harassment got worse after the November 5, 2018 meeting, Greg Roman unleashed a campaign of retaliation against Plaintiff, Caitriona Brady, Lisa Barbounis, Marnie Meyer, Patricia McNulty, and Delaney Yonchek.

199.    Greg Roman openly voiced his retaliatory intent.

200.    Greg Roman targeted the employees who reported his sex and gender discrimination and referred to them as "the usurpers."

201.    Greg Roman also called the female staff who reported his sexual harassment and sexual misconduct, "backstabbers."

202.    Greg Roman notified Defendant, Mathew Bennett, "they are all usurpers and I will never work with usurpers."

203.    Greg Roman announced on a radio show that "all usurpers should be crushed."

204.    Plaintiff was forced to continue working with Defendant, Greg Roman.

205.    Plaintiff was still forced to take orders from Defendant, Greg Roman.

206.    Greg Roman began a campaign of retaliation aimed at Plaintiff, Caitriona Brady and the other female employees in the office who reported discrimination and harassment including Marnie Meyer, Lisa Barbounis, and Patricia McNulty.

207.    Sometime around March 2019, Daniel Pipes announced that Greg Roman would return to full responsibilities as Director of the MEF.

208.    After this meeting Greg Roman began working directly with the staff again, including the female staff who Greg Roman had subjected to discrimination and harassment in the workplace based upon their sex and gender.

209.    Greg Roman was brought back on what was labeled a "**strict probationary period**."   Daniel Pipes promised strict rules, guidelines, scrutiny, and oversight.   None of this occurred.

210.    Greg Roman was moved back to a position where he would interact directly with the female staff who he prayed upon, abused, and harassed.

211.    Plaintiff, Caitriona Brady never agreed to working with Greg Roman again and informed management of MEF that Plaintiff did not want to work with Greg Roman again.

212.    Plaintiff, Caitriona Brady objected to Greg Roman's return and was scared, nervous, and upset that he was allowed to return after he spent years subjecting female staff including but not limited to the interns at MEF, to severe and pervasive sexual harassment.

213.    The sexual harassment and the discrimination and harassment based upon sex and gender included but was not limited to sexual misconduct, quid pro quo sexual propositions, and unwelcome sexual touching.

214.    Any corrective measures were quickly disregarded by Daniel Pipes and Defendant, Greg Roman after Greg Roman's return in March 2019.

24

215.    At no time was Greg Roman on a probationary period.   Daniel Pipes brought Greg Roman back and allowed Greg Roman to resume all responsibilities as the number-two person in charge of the MEF.

216.    Shortly after Greg Roman's return, Plaintiff, Caitriona Brady noted the discrimination and harassment and retaliation.

217.    The female staff and Plaintiff, Caitriona Brady were subjected to a continuing hostile work environment including retaliation due to their reporting and opposing Greg Roman's discrimination and harassment in the workplace.

218.    The female staff including Plaintiff, Caitriona Brady attempted to discuss the fact that bringing Greg Roman back was not working, and that Greg Roman was actively disregarding the guidelines and rules that the female staff and Daniel Pipes agreed upon as the conditions for Greg Roman's return.

219.    Daniel Pipes continued his same policy employed for at least the last five (5) years, of ignoring, disregarding, and refusing to take action in response to reports of discrimination, harassment and retaliation concerning Defendant, Greg Roman.

220.    At all times, Plaintiff was forced to continue working at the Middle East Forum with Defendant, Greg Roman.

221.    During the March 2019 meeting, Daniel Pipes announced that he was going to eliminate the purported safe measures initiated to protect the female staff from Greg Roman's severe and pervasive discrimination, harassment, and retaliation.

222.    Accordingly, since March 2019, Plaintiff, Caitriona Brady has been subjected to increased interactions with Defendant, Greg Roman.

25

223.    This was around the same time when Plaintiff, Caitriona Brady learned that Greg Roman was spreading information about Plaintiff's father.

224.    Greg Roman was actively informing MEF staff that Plaintiff, Caitriona Brady's father and Marnie Meyer were engaged in an adulterous, sexual affair.

225.    Greg Roman began a rumor that Marnie Meyer was having a sexual relationship with Plaintiff's father.

226.    Plaintiff, Caitriona Brady is an employee at the Middle East Forum who holds the position Development Associate.

227.    When Greg Roman first learned that another allegation of sexual harassment was reported, he did not yet know the details of the allegation and did not yet know it related to his claims involving Marnie Meyer and Plaintiff's father.

228.    Accordingly, Greg Roman and Mathew Bennett began a guessing game where they attempted to guess what and who the allegation involved.

229.    Greg Roman incorrectly guessed that the sexual harassment allegation involved a former intern named Gabrielle Bloom who Greg Roman purportedly paid money to in addition to standard money MEF paid to an intern.

230.    Just days after the March 2019 meeting when Daniel Pipes announced that he was eliminating the measures designed to protect female staff from Defendant Greg Roman, Greg Roman called Mathew Bennett.

231.    Greg Roman informed Matthew Bennett, "now that I am back, I am going to begin searching for a replacement for the Director of Development."

232.     This was the position that one of Plaintiff's coworkers named Patricia McNulty held.   Patricia McNulty was one of the employees who along with Plaintiff, Caitriona Brady reported Greg Roman's unlawful conduct toward female staff.

233.     Greg Roman's statement about coworker, Patricia McNulty indicated his intent to retaliate against the employees who he called "the usurpers." These were the women who reported Greg Roman's discrimination and harassment.

234.     Greg Roman initiated a campaign of discrimination, harassment, and retaliation against Plaintiff in an effort to effect Plaintiff's termination.

235.     Daniel Pipes utterly disregarded all reports of ongoing discrimination, harassment and retaliation involving Defendant, Greg Roman.

236.     Despite allowing Greg Roman to return on probationary status, Daniel Pipes continued to protect, shield, indemnify and assist Greg Roman from any and all impact caused by his severe and pervasive discrimination and harassment in the workplace against female staff.

237.     Daniel Pipes has allowed, permitted, sanctioned and condoned Greg Roman's sexual harassment and sex and gender discrimination and has never considered a permanent solution.

238.     Accordingly, Daniel Pipes has condoned, sanctioned, permitted, and allowed the discrimination, harassment, and retaliation to continue.

239.     Defendants have made Plaintiff's working conditions so onerous, abusive, and intolerable that no person in Plaintiff's shoes should be expected to continue working under such conditions.

240.     Plaintiff was constructively discharged from her employment due to the return of Greg Roman and the severe and pervasive hostile work environment which Plaintiff, Caitriona

Brady was subjected to and due to the campaign of retaliation resulting from Plaintiff's opposition to and reports of discrimination and harassment in the workplace.

241. The unlawful acts, comments and conduct described above all involved the same individual and the same pattern of behavior which includes sexual harassment, sexual misconduct, and sex and gender discrimination to which the female employees of MEF have been subjected to for at least the last five (5) years.

242. Defendants and Daniel Pipes and Greg Roman have been subjecting female staff of The Middle East Forum to discrimination and harassment and retaliation due to their sex and gender for years.

243. Plaintiff, Caitriona Brady was highly aware that reporting discrimination and harassment to Daniel Pipes or other employees at the MEF was futile and would probably result in retaliation.

244. Plaintiff, Caitriona Brady was aware that little or nothing was done to protect any of the many previous female employees who reported discrimination and harassment in the workplace involving Greg Roman.

245. Moreover, Plaintiff, Caitriona Brady was acutely aware that some employees who had made reports of discrimination and harassment in the workplace had ended up terminated shortly after making the report.

246. Greg Roman was allowed to continue subjecting female staff of the MEF to discrimination and harassment for years with no corrective action until November 2018; when reports of at least six female employees were made simultaneously.

247.    Even then Daniel Pipes said that Greg Roman's conduct and comments did not rise to the level where discipline was warranted and Greg Roman was permitted to continue his employment with MEF with no adverse employment action.

248.    Accordingly Plaintiff, Caitriona Brady maintained a reasonable belief that reporting sex and gender discrimination and harassment would be futile or result in retaliation.

249.    The way in which Daniel Pipes ignored reports of discrimination and harassment in the workplace concerning Greg Roman created a reasonable inference that any individual report of sexual harassment, sexual misconduct, or sex and gender discrimination involving Greg Roman would be futile and would most likely result in retaliation.

250.    Plaintiff, Caitriona Brady was made aware of Laura Frank and Lara Szott's termination which occurred in connection with protected activity.

251.    Plaintiff, Caitriona Brady was made aware of other female employees' attempts to vindicate their rights in connection with discrimination and harassment involving Greg Roman.

252.    For these reasons Plaintiff, Caitriona Brady was reasonably dissuaded from reporting Greg Roman's discrimination and harassment.

253.    Daniel Pipes sanctioned a plan to make Eman Patel's work environment so onerous that she quit.

254.    Samantha Mandalas was another female employee of the Middle East Forum.

255.    Samantha Mandalas said in her exit interview "if I would have been a male I would have gotten more respect."

256.    Samantha Mandalas was subjected to discrimination and harassment due to her sex and gender.

257.     Plaintiff, Caitriona Brady was subjected to discrimination and harassment by Defendants, Middle East Forum, Greg Roman, Daniel Pipes, and Matt Bennett based upon Plaintiff's sex and gender.

258.     The discrimination and harassment to which Plaintiff was subjected was severe and pervasive and created a hostile work environment.

259.     During Plaintiff's employment, Defendants, including Defendant, Greg Roman, subjected Plaintiff to discrimination and harassment by cursing, yelling, screaming, shouting, insulting, belittling, disparaging, and verbally abusing female staff including Plaintiff, Caitriona Brady.

260.     Plaintiff, Caitriona Brady reported Greg Roman's severe and pervasive discrimination and harassment and was subjected to retaliation.

261.     Greg Roman created a hostile work environment and then implemented and enforced policies whereby Plaintiff and the other female staff were denied the ability to report the severe and pervasive discrimination and harassment in the workplace.

262.     Greg Roman actively and willfully worked to subjugate female employees of the Middle East Forum through policies designed to impede, obstruct, and prevent female employees from vindicating their rights.

263.     Greg Roman ordered female employees including Plaintiff never to speak directly with President, Daniel Pipes.

264.     In November 2018, Plaintiff, Caitriona Brady notified and reported Greg Roman's discrimination and harassment of the female staff during a meeting with Daniel Pipes when almost every female employee of the Middle East Forum came forward to report the severe and

pervasive discrimination and harassment to which female staff were subjected by Defendant, Greg Roman.

265.    The female staff reported Greg Roman's harassment, bullying, and his intolerable, onerous, and abusive conduct and comments designed to discriminate against female employees of the Middle East Forum.

266.    The meeting, which was sometime around November 5, 2018, included the female staff and Defendant, Daniel Pipes.

267.    The meeting was held to report Greg Roman's discrimination and harassment in the workplace.   Those in attendance included: Patricia McNulty, Lisa Barbounis, DeLaney Yonchek, Defendant, Matt Bennett, Stacy Roman, Thelma Prosser, Marnie Meyer, Mark Fink, Defendant, Daniel Pipes, and Plaintiff, Caitriona Brady.

268.    Stacy Roman is Greg Roman's sister.   Her presence at a meeting had a chilling effect on female employees attempted to openly voice concerns involving Greg Roman.

269.    Throughout the entire meeting, while the female staff who were subjected to severe and pervasive discrimination and harassment in the workplace attempted to report Greg Roman's unlawful conduct, Greg Roman's sister, Stacy Roman was belligerent and interjected argumentative comments.

270.    For example, Stacy Roman blamed the women who were subjected to discrimination and harassment based upon their sex and gender stating that they should not have worn such short skirts.

271.    Daniel Pipes coerced the female staff to sign nondisclosure agreements ("NDA") as a condition to attending the meeting and having reports of discrimination and harassment considered for the first time.

272.     Daniel Pipes would not allow the female staff including Plaintiff, Caitriona Brady to report discrimination and harassment in the workplace until she signed an NDA.

273.     Greg Roman set up cameras around the office and harassed the female staff by monitoring the female staff, including Plaintiff, Caitriona Brady.

274.     Greg Roman used the surveillance equipment to monitor female staff and how often and how long they used the bathroom.

275.     Greg Roman made it known that he was watching the female staff through the video system.   For example, Greg Roman would make comments to employees that were working about the work they were presently performing such as, "didn't you already input that one?"

276.     Greg Roman's message was designed to harass, scare, intimidate, and female staff by sending instant-messages about what female members of the staff were working on.

277.     Greg Roman told female employees how many times they used the restroom in a given day.

278.     Greg Roman actively attempted to engage inters of the MEF in sexual relationships.

279.     Greg Roman uses his position and power as a proxy for the MEF to engage inters of the MEF in sexual relationships.

280.     Because of Greg Roman's history of discrimination and harassment in the workplace, to which female staff at MEF have been subjected, Plaintiff, Caitriona Brady was afraid to be alone with Defendant Greg Roman.

281.     Plaintiff, Caitriona Brady sent text messages to her supervisor and stated that Plaintiff was afraid to be along with Defendant, Greg Roman.

282.    Greg Roman forced female employees to sit next to him at his desk, instead of across from him.

283.    Greg Roman maneuvers himself to get inappropriately close to the female staff including Plaintiff, Caitriona Brady.

284.    Greg Roman spoke in a sexually suggestive way to and about female staff and it was common knowledge that Greg Roman used his position as Director of the Middle East Forum to prey upon the female staff and interns.

285.    Greg Roman continued to divulge inappropriate sexual information to female staff.

286.    Greg Roman started inappropriate sexual rumors involving staff members including, Plaintiff, Caitriona Brady.

287.    Greg Roman informed people in the office that Plaintiff's father was having a sexual affair with another staff member.

288.    Daniel Pipes continues to protect, shield, indemnify and assist Greg Roman from any and all consequences caused by his severe and pervasive discrimination and harassment.

289.    Accordingly, Daniel Pipes has condoned, sanctioned, permitted, and allowed the discrimination, harassment, and retaliation to continue.

290.    Defendants have made Plaintiff's working conditions so onerous, abusive, and intolerable that no person in Plaintiff's shoes should be expected to continue working under such conditions.

291.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

292.     The severe and pervasive discrimination and harassment in the workplace has caused Plaintiff to suffer an acerbation and aggravation of any preexisting condition involving emotional distress.

293.     As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

294.     As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

295.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation to which such employment entailed.

296.     Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

297.     Plaintiff has further experienced severe emotional and physical distress.

298.     Plaintiff has suffered from severe emotional distress which has caused physical manifestations as a result of Defendants' unlawful and severe and pervasive conduct and comments.

299.     Any preexisting condition which Plaintiff may have maintained prior to her employment for Defendant, MEF was acerbated and aggravated by the severe and pervasive discrimination and harassment in the workplace.

300.     As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

301.    Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

302.    At all times material Defendants refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment and hostile work environment.

303.    Defendants discriminatory conduct was severe and pervasive, and created a hostile work environment for Plaintiff.

304.    The above are just some examples of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

305.    Plaintiff claims a pattern and practice of discrimination, claims continuing violations, and makes all claims herein under the continuing violations doctrine. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

**FIRST CAUSE OF ACTION**
**<u>DISCRIMINATION UNDER STATE LAW</u>**
**(Caitriona Brady v. Middle East Forum)**

305.    Plaintiff, Caitriona Brady, hereby incorporates all allegations contained in paragraphs one (1) through three-hundred-forty-four (305) as fully as if they were set forth at length.

306.    The PHRA § 955 provides that it shall be an unlawful discriminatory practice:

   a.    For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or impendent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the service required.

35

307.    Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of Plaintiff's sex and gender.

308.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

**SECOND CAUSE OF ACTION**
**RETALIATION UNDER STATE LAW**
**(Caitriona Brady v. Middle East Forum, Greg Roman and Daniel Pipes)**

309.    Plaintiff, Caitriona Brady, hereby incorporates all allegations contained in paragraphs one (1) through three-hundred-eight (308) as fully as if they were set forth at length.

310.    PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

311.    Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

**THIRD CAUSE OF ACTION**
**DISCRIMINATION UNDER STATE LAW**
**(Caitriona Brady v. Greg Roman and Daniel Pipes)**

312.    Plaintiff, Caitriona Brady, here by incorporated all allegations contained in paragraphs one (1) through three-hundred-eleven (311) as fully as if they were set forth at length.

313.    PHRA § 955(e) provides that it shall be unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory

practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

314.    Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by committing assault and battery, aiding, abetting, inciting, compelling, and/or coercing the discriminatory conduct.

**FORTH CAUSE OF ACTION**
**DISCRIMINATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORINANCE**
**(Caitriona Brady v. Middle East Forum)**

315.    Plaintiff, Caitriona Brady, hereby incorporates all allegations contained in paragraphs one (1) through three-hundred-fourteen (314) as fully as if they were set forth at length.

316.    The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice: "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions, or privileges of employment or with respect to any matter directly or indirectly related to employment."

317.   Defendants engages in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's sex and gender.

318.   Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

**FIFTH CAUSE OF ACTION**
**RETALIATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORINANCE**
**(Caitriona Brady v. Middle East Forum, Greg Roman and Daniel Pipes)**

319.   Plaintiff, Caitriona Brady, hereby incorporates all allegations contained in paragraphs one (1) through three-hundred-eighteen (318) as fully as if they were set forth at length.

320.   The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: "For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

321.   Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

**SIXTH CAUSE OF ACTION**
**DISCRIMINATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORINANCE**
**(Caitriona Brady v. Greg Roman and Daniel Pipes)**

322.    Plaintiff, Caitriona Brady, hereby incorporates all allegations contained in paragraphs one (1) through three-hundred-twenty-one (321) as fully as if they were set forth at length.

323.    The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provided that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

324.    Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

**SEVENTH CAUSE OF ACTION**
**PENNSYLVANIA BREACH OF CONTRACT**
**(Caitriona Brady v. Middle East Forum and Greg Roman)**

325.    Plaintiff, Caitriona Brady, hereby incorporates all allegations contained in paragraphs one (1) through three-hundred-twenty-four (324) as fully as if they were set forth at length.

326.    Plaintiff, Caitriona Brady entered into a valid, enforceable contract with Defendant, Middle East Forum and Defendant, Greg Roman.

327.    There was an offer, acceptance, and consideration.

328.    At the time when Plaintiff executed her obligations under the contract, Plaintiff, Caitriona Brady maintained a valid claim for discrimination and harassment in the workplace in the Eastern District of Pennsylvania pursuant to Title VII of the Civil Rights Act of 1964.

329.    Defendants sought an amicable way to resolve Plaintiff's Title VII claims and counsel for Defendant, Dave Walton, sent electronic communications to Plaintiff asking Plaintiff to withdraw her case, pursuant to a 41.1(b) dismissal.

330.    Defendants made an offer to provide something of value in exchange for Plaintiff's agreement to dismiss with prejudice all claims brought under Title VII of the Civil Rights Act of 1964, and the negligent hiring/retention claims included in the Second Amended Complaint.

331.    In return for Plaintiff's agreement to have her case dismissed with prejudice, Defendants promised to provide Caitriona Brady something of value.

332.    Plaintiff, Caitriona executed all promises made and sent a letter to the Court requesting a 41.1(b) dismissal.

333.    Defendants then breached their contractual obligations and refused to execute the promises Defendants made in exchange for Plaintiff's agreement to dismiss her case.

334.    Defendants have breached their duty imposed by the contract.

335.    After Plaintiff, Caitriona Brady executed all contractual promises made, Defendants breached their duty under the contract.

336.    Plaintiff, Caitriona Brady has incurred damages equal to the market value of the contract, plus interest.

337.     Plaintiff, Caitriona Brady has also incurred legal expenses in connection with seeking the enforcement of the above-described contract.

338.     Plaintiff, Caitriona Brady has repeatedly attempted to work with Defendants to obtain satisfaction of the contract as described herein.

339.     Despite a clear record of communications between Plaintiff and Defendants that confirms the essential terms of the contract, and Plaintiff's clear adherence to all terms and promises she made, Defendants have stated their intention to avoid their own contractual obligations.

340.     Defendants' position has left Plaintiff with no choice but to seek enforcement of the contractual obligations and all damages caused by Defendants' breach.


## JURY DEMAND

Plaintiff requests a jury trial on all issued to be tried.


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.


**DEREK SMITH LAW GROUP, PLLC**


By:   ____/s/ Seth D. Carson_____
            Seth D. Carson, Esquire

41

1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Phone: 215.391.4790
Email: seth@dereksmithlaw.com

DATED: April 27, 2021